HUMKO PRODUCTS DIVISION OF KRAFT, INC., Petitioner,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,

v.

ILLINOIS CENTRAL GULF RAILROAD CO., Seaboard Coast Line Railroad Co., Southern Railway Co., and Georgia Railroad, Intervening Respondents.

No. 81–2717.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1983.

Decided Aug. 24, 1983.

---

Richard W. Gillis, Chicago, Ill., for petitioner.

Dennis J. Starks, I.C.C., Washington, D.C., for respondents.

Howard D. Koontz, Ill. Central Gulf RR Co., Chicago, Ill., for intervening respondents.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and BROWN, Senior Circuit Judge.[*]

---

[*] The Honorable Bailey Brown, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. "Transit privileges" allow a shipper to store or, as in this case, process a commodity at an intermediate point on a route while paying the lower "joint through rate" for transportation. The privilege "rests upon the fiction that the incoming and outgoing transportation services, which are in fact distinct, constitute a continuous shipment...." *Central Railroad of New*

BAILEY BROWN, Senior Circuit Judge.

This petition for review of an order of the Interstate Commerce Commission (ICC) was brought by Humko Products Division of Kraft, Inc., (Humko), after the ICC determined Humko was not entitled to reparations and other relief because of alleged overcharges by the intervening respondent railroads. The two issues before the court are: (1) whether this court has jurisdiction to review the ICC order involved in this proceeding, and (2) if this court does have jurisdiction, whether the ICC erred in denying Humko's claim for reparations and other relief. For the reasons stated herein, we determine that this court does have jurisdiction to review the ICC order, and that the ICC's decision must be affirmed.

I.

The facts are not disputed. Between May 1975, and September 1976, Humko shipped 144 railroad carloads of soybean oil from origins in Iowa to destinations in Georgia. The shipments were accorded "transit privileges" at Champaign, Illinois, or Memphis, Tennessee.[1] The railroads[2] collected the transportation charges under the single-factor commodity rate, which is a through rate from Iowa to Georgia. This tariff, however, included the "aggregate of intermediates" rule which provided that the through rate published in the tariff would not apply if a lower aggregate or combination of intermediate rates could be constructed from Iowa to Georgia.

Humko contends it was entitled to a combination rate on its shipments determined by two separate tariffs. The first tariff set a rate from Iowa via the transit stations (with transit privileges) in Champaign or

*Jersey v. United States,* 257 U.S. 247, 257, 42 S.Ct. 80, 82, 66 L.Ed. 217 (1921).

2. Humko's shipments were transported from Iowa, through the transit points, to Birmingham, Alabama, by Illinois Central Gulf Railroad. The shipments were then transported from Alabama to Georgia by either Seaboard Coast Line Railroad or Southern Railway Company.

Memphis to Jackson, Tennessee, and the second tariff set a rate from Jackson, Tennessee to the Georgia destinations. The combination of these two tariffs would have enabled Humko to ship its soybean oil from Iowa to Georgia at a lower rate than would the single, through rate tariff applied by the railroads. The second tariff in Humko's proposed combination (from Jackson, Tennessee, to Georgia), however, contained a restriction that "rates will not apply on shipments accorded transit privileges." The primary dispute before this court stems from the ICC's determination that the restriction in the tariff from Jackson, Tennessee to Georgia precluded that tariff's application to Humko's shipments since, it determined, these were "shipments" from Iowa to Georgia and these "shipments" had been accorded transit privileges. Accordingly, the ICC approved the application of the through rate as applied by the railroads.

## II.

■ Before proceeding to the merits of this cause, we must first address the contention of the railroads, in which the ICC joined, that this court does not have jurisdiction to review the ICC order challenged here by Humko.

It is clear that 28 U.S.C. § 2342[3] provides the courts of appeals with exclusive jurisdiction to review final orders of the ICC made reviewable by 28 U.S.C. § 2321.[4] *Genstar Chemical Ltd. v. I.C.C.,* 665 F.2d 1304, 1307 (D.C.Cir.1981), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1750, 72 L.Ed.2d 161

(1982). There are, however, exceptions to this grant of jurisdiction in the courts of appeals, one being that created by 28 U.S.C. § 1336[5] which grants the district courts jurisdiction to review ICC orders "for the payment of money . . . . "

The railroads and the ICC contend that this court does not have jurisdiction because Humko's complaint before the ICC only sought the return of alleged overcharges and that the ICC's order only denied such relief. Humko asserts that this court has jurisdiction because the ICC's decision amounted to an announcement of a new policy. In Humko's view, this new policy would require that all restrictions in local tariffs are to be given effect even when the local tariff[6] is being used in combination with other intermediate rates to form the lowest possible aggregate of intermediate rates. This policy decision, Humko concludes, involves more than a decision by the ICC denying an order for the payment of money, and therefore this court properly has jurisdiction to review the ICC order.

We recently determined in *Pullman-Standard v. I.C.C.,* 705 F.2d 875 (7th Cir.1983), that when faced with a jurisdictional question like the one presently before us, "we will adopt the more literal approach suggested in *Consolidated Rail Corp. v. I.C.C.,* [685 F.2d 687 (D.C.Cir.1982)]:

> The nature of the ICC's order, not the difficulty, novelty, or general importance of the legal questions raised by the order, controls the question of review jurisdiction. 685 F.2d at 694."

---

**3.** 28 U.S.C. § 2342 provides in pertinent part:
The court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—
\* \* \* \* \* \*
(5) all rules, regulations or final orders of the Interstate Commerce Commission made reviewable by section 2321 of this title . . .

**4.** 28 U.S.C. § 2321(a) provides:
Except as otherwise provided by an Act of Congress, a proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission shall be brought in a court of appeals as provided by and in the manner prescribed in [28 U.S.C. §§ 2341–2353].

**5.** 28 U.S.C. § 1336(a) provides:
Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, in whole or in part, any order of the Interstate Commerce Commission, and to enjoin or suspend, in whole or in part, any order of the Interstate Commerce Commission for the payment of money or the collection of fines, penalties, and forfeitures.

**6.** The tariff Humko would apply that set the rate from Jackson, Tennessee to the Georgia destinations was a "local" tariff.

*Pullman-Standard v. I.C.C.*, 705 F.2d at 880. Thus, we must look to the nature of the ICC's order to determine where jurisdiction will lie.

Humko relied on four statutory provisions in support of its claim before the ICC. However, only the allegation that 49 U.S.C. § 10761(a)[7] was violated was addressed on the merits by the ICC because the other claims were held to be barred by the statute of limitations and review of this determination is not sought. The ICC's administrative law judge dismissed Humko's complaint, and subsequent proceedings before the ICC resulted in the affirmance of the administrative law judge.

█ It is argued by the ICC and the railroads that the ICC's order merely denied Humko's claim for the repayment of the alleged overcharge. Even "an order denying reparations, although it is not literally an order for the payment of money, is treated as one for purposes of determining which court has jurisdiction." *Field Container Corp. v. I.C.C.*, 712 F.2d 250 at 254 (7th Cir.1983), *citing United States v. I.C.C.*, 337 U.S. 426, 441, 69 S.Ct. 1410, 1418, 93 L.Ed. 1451 (1949). Accordingly, if the ICC's order only denied reparations to Humko, this court would have no jurisdiction. However, in *Pullman-Standard* and *Field Container* we held that if the order of the ICC to be reviewed did more than require or deny the payment of money, jurisdiction lies in the courts of appeals. The order of the ICC which is before us for review denied all relief sought there by Humko. In the complaint filed with the ICC, in addition to seeking reparation of the alleged overcharges, Humko also sought an order "requiring defendants to cease and desist from attempting to collect charges higher than those found applicable, reasonable or lawful." Thus the order of the ICC that is before us for review did more than deny reparations for overcharges; it denied Humko's prayer for an order prohibiting the railroads from collecting illegal charges

in the future. Accordingly, we determine that this court has jurisdiction to review this order.

### III.

Turning now to the merits of this dispute, we note first that our review of ICC orders is limited. 5 U.S.C. § 706 provides that as a reviewing court we may only:

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, [or]
>
> \* \* \* \* \* \*
>
> (E) unsupported by substantial evidence....

See *Bowman Transportation v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 284, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974). The reviewing court should refrain from weighing the evidence, and instead "inquire into the soundness of the reasoning by which the Commission reaches its conclusions only to ascertain that the latter are rationally supported." *United States v. Allegheny-Ludlum Steel Corp.*, 406 U.S. 742, 749, 92 S.Ct. 1941, 1946, 32 L.Ed.2d 453 (1972).

The ICC's administrative law judge determined that the rates collected by the railroads were legal. He concluded that Humko's proposed combination of rates to form a lower aggregate or combination of intermediate rates could not apply due to the restriction in the tariff establishing the local rate from Jackson to Georgia, this restriction applying to shipments accorded transit privileges. The administrative law judge reached this conclusion after determining "one must regard the movements at issue as being continuous shipments from Iowa to Georgia." Furthermore, he concluded the weakness with Humko's argument was that:

> Combinations to defeat through rates may not be constructed of unlike compo-

---

7. 49 U.S.C. § 10761(a) provides in part:
[A] carrier may not charge or receive a different compensation for the transportation or service than the rate specified in the tariff....

nents. A rate providing for transit may not be joined to one prohibiting it to create a combination defeating a through rate. See *Through Rates, supra,* l.c. 173; *California Cotton Oil Corp. v. Atchison, T. & S.F. Ry. Co.,* 218 I.C.C. 97, 102 (1936); and *Purex Corp. v. Pennsylvania R. Co.,* 277 I.C.C. 753, 756 (1950). It follows that complainant's attempt to construct a rate over Jackson is inappropriate and unavailing.

App. at 25.

■ We determine that the administrative law judge's interpretations of the law and applicable tariffs, as adopted by the ICC, are correct and certainly are not arbitrary or capricious. As stated, the tariff containing the local rate between Jackson, Tennessee and the Georgia destinations included a restriction providing:

Rates will not apply on shipments accorded transit privileges. . . .

In order for us to adopt Humko's reasoning that this restriction is not applicable because the transit occurred only on the portion of the movement from Iowa to Jackson, we would have to view the facts of this case as if two distinct movements had occurred: from Iowa to Jackson and from Jackson to Georgia. But this is not what occurred, and even if it had, "a joint through rate with provision for storage in transit does not cover the same transportation service as a combination of two rates applying to two separate and distinct movements. . . . [L]ike transportation services and charges must be compared." *Terminal Refrigerating Co. v. Atchison, Topeka & Santa Fe Ry.,* 178 I.C.C. 697, 701 (1931). Moreover, Humko's reasoning disregards the fact that "[i]t is a matter of common knowledge that multiple diversions or reconsignments of shipments result in added circuity of movement and in extraordinary expense to the carriers." *Purex Corp. v. Pennsylvania R.R.,* 277 I.C.C. 753, 755 (1950).

In *Moore Brothers v. C.B. & Q. Ry.,* 210 I.C.C. 95 (1935), relied upon by Humko, the ICC considered a tariff that provided that a local rate between two points could not be used as an intermediate rate to form an aggregate of intermediate rates. The ICC held that such provision was illegal in that it was in conflict with a statutory provision, the substance of which is now codified in 49 U.S.C. § 10726(a)(1)(B), which proscribed a through rate that exceeds the total of the intermediate rates. Humko particularly relies on some language in *Moore Brothers,* which, it contends, is applicable here; there the ICC said, *inter alia,* that "no matter how restricted," *id.* at 99, no restriction can change the status of an intermediate rate. In *Moore Brothers,* however, the ICC makes clear the reasoning behind that decision, i.e. that the purpose of the statute is to prevent shippers from charging more for through service than for the *same* service if performed in separate included movements. Here, on the contrary, Humko is not being charged more for through service than for the same service in separate included movements. Instead, Humko is being charged for through service, but it also received the advantage of transit privileges. It should be obvious that the allowance of such privileges is a cost to the railroad. We conclude, therefore, that the decision of the ICC in *Moore Brothers* is not inconsistent with its decision here.

Humko also contends a recent ICC decision in *Bartlett Agri Enterprises, Inc. v. Atchison, Topeka & Santa Fe R.R.,* I.C.C. No. 38449 (April 1, 1983), is inconsistent with the ICC's order in this case. In *Bartlett,* the issue pertinent to the present case was whether Carrier A's tariff restriction proscribing transit privileges on its inbound movement to Kansas City could override the provision allowing transit privileges in Carrier B's outbound tariff. The ICC held that Carrier A's tariff restriction did not override the provision in Carrier B's tariff allowing transit privileges since Carrier B was not a party to the tariff covering the inbound movement. The instant case is distinguishable because Illinois Central Gulf Railroad was the carrier moving the shipments from the points of origin in Iowa to Birmingham, Alabama, and this movement went through the transit points as well as

Jackson, Tennessee. Thus, Illinois Central Gulf was a party to all the tariffs that did or could have applied.

Accordingly, the ICC's order is AFFIRMED.